UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEJANDRO CALDERON,<br><br>                                  Plaintiff,<br><br>        v.<br><br>CITY OF SAN JOSE, et al.,<br><br>                                  Defendants. | Case No.  24-cv-00289-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 32 |

Plaintiff Alejandro Calderon brings this action against defendants the City of San Jose ("City") and Officer Jorge Rodriguez-Martinez.[1] Dkt. No. 10. The amended complaint asserts violations of the First and Fourth Amendments under 42 U.S.C. § 1983 as well as related state claims. Defendants move to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim and they assert that Officer Rodriguez is entitled to qualified immunity. Dkt. No. 32. Mr. Calderon opposes the motion. Dkt. No. 36. The Court held oral argument on the motion on July 23, 2024. Dkt. No. 38.

Upon consideration of the moving and responding papers, and the parties' arguments at the hearing, the Court grants defendants' motion to dismiss the amended complaint with limited leave to amend.[2]

---

[1] In his amended complaint, Mr. Calderon named seven other members of the San Jose Police Department as defendants, in addition to 50 "Doe" defendants. *See* Dkt. No. 10. On June 17, 2024, the parties stipulated to dismiss defendants Dewberry, Felicien, Juarez, Stults, Latendresse, and Cooley with prejudice. Dkt. Nos. 34, 35. At the hearing on the defendants' motion to dismiss, the parties confirmed that they meant also to dismiss defendant Foss. Dkt. No. 38.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 29, 30.

## I. BACKGROUND

According to the amended complaint, on May 22, 2023, officers of the San Jose Police Department came to Mr. Calderon's residence. Dkt. No. 10 ¶ 17. The officers questioned Mr. Calderon's girlfriend about "whether there was a domestic violence dispute going on at the residence," and she "adamantly" denied that there was. *Id.* Although the amended complaint is unclear on this point, the officers apparently left the residence thereafter.

After about five minutes, the officers returned to the residence. *Id.* ¶ 18. Mr. Calderon alleges that he spoke to the officers through his screen door. *Id.* Then, he says that when he "put his hand through the screen door to open it," an unidentified officer "violently pulled [him] out of his home," "without cause." *Id.* Mr. Calderon "repeatedly" asked if he was being detained, and Officer Rodriguez responded that Mr. Calderon was not being detained. *Id.* Mr. Calderon alleges that, "despite [his] being compliant, the officers pulled, manipulated, and twisted [his] arm behind his back to handcuff him," and "placed the handcuffs extremely tight around [his] hands." *Id.*

Mr. Calderon says that he was arrested and charged "without evidence" for a domestic violence offense and was detained at Elmwood Correctional Facility for three days before the charges were dropped and he was released. *Id.* ¶ 19.

Mr. Calderon asserts the following claims: (1) unlawful seizure in violation of the Fourth Amendment, under 42 U.S.C. § 1983, against Officer Rodriguez; (2) excessive force in violation of the Fourth Amendment, under 42 U.S.C. § 1983, against Officer Rodriguez; (3) retaliation for questioning officer conduct in violation of the First Amendment, under 42 U.S.C. § 1983, against Officer Rodriguez; (4) interference with the exercise or enjoyment of constitutional rights, under California Civil Code § 52.1 ("the Bane Act"), against Officer Rodriquez and the City; (5) negligence against Officer Rodriguez and the City; (6) assault against Officer Rodriguez and the City; (7) battery against Officer Rodriguez and the City; and (8) false imprisonment against Officer Rodriguez and the City. Mr. Calderon claims that he "suffer[ed] severe physical injuries, including tendinitis and nerve damage in his left hand"[3] as well as "severe emotional distress." *Id.*

---

[3] Elsewhere, Mr. Calderon refers to injuries to his "right arm." *Compare* Dkt. No. 10 ¶¶ 20, 42

1  ¶ 20. He seeks unspecified general, special, punitive, statutory, and exemplary damages as well as an award of attorneys' fees and costs.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-

---

*with id.* ¶¶ 30, 34, 45.

1  unlawfully-harmed-me accusation." *Id.* at 678.

## III. DISCUSSION

### A. Doe Defendants

Mr. Calderon includes "Does 1-50" in the caption of his amended complaint, which includes generic allegations that all such defendants are "responsible in some manner for [his] injuries and damages." *See* Dkt. No. 10 at 2 (caption) & ¶ 15. However, the amended complaint contains no specific allegations as to any such unnamed defendant. *See id*. At the hearing on the defendants' motion to dismiss, Mr. Calderon's counsel confirmed that the Doe defendants are not intended to represent specific unidentified individuals against whom Mr. Calderon is asserting claims; rather, they are merely placeholders for additional defendants that may be discovered as the case progresses. Dkt. No. 38. This is not an appropriate use of Doe defendant pleading. *See Merino v. Cnty. of Santa Clara*, No. 18-CV-02899-VKD, 2019 WL 2437176, at *12 (N.D. Cal. June 11, 2019) ("[T]he use of 'John Doe' to identify a defendant is generally disfavored . . . ."). Doe defendant pleading may be appropriate in limited circumstances, such as where "there are specific [unknown] individuals whose conduct forms the basis of [plaintiff's] claims" and who may be identifiable through some discovery. *Id.* However, even in such situations, the time in which such defendants can remain unnamed is limited. *See Sanderlin v. City of San Jose*, No. 20-CV-04824-BLF, 2022 WL 913055, at *12 (N.D. Cal. Mar. 29, 2022) ("It would be unfair to Defendants to continue the use of Doe monikers throughout the entire discovery process because it could expose Defendants to boundless discovery.").

Mr. Calderon provides no justification for including Doe defendants in his pleading. The Court will thus dismiss the claims against all Doe defendants, with leave to amend. If Mr. Calderon chooses to replead claims against any Doe defendant, he must at a minimum identify "their roles or positions or specific acts" and any other details forming the basis of his claims against them. *Merino*, 2019 WL 2437176, at *12.

### B. Federal Claims

Mr. Calderon asserts three claims for alleged violations of his rights under 42 U.S.C. § 1983. Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or

immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  A claim for civil rights violations under § 1983 requires two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendants do not dispute that the officers who arrested Mr. Calderon were acting "under color of state law."  Instead, they argue that Mr. Calderon has not pled sufficient facts to support a plausible claim that any defendant deprived him of any constitutional rights.

### 1. Failure to Allege Defendant-Specific Conduct

Defendants argue that Mr. Calderon's claims should be dismissed because the amended complaint fails to allege which officer took the action or actions Mr. Calderon says violated his constitutional rights.  Dkt. No. 32 at 5-8.  The Court agrees with defendants.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Here, Mr. Calderon alleges that "the officers" or "defendants" engaged in the conduct in question without distinguishing between or among them.  *See* Dkt. No. 10 ¶ 18 (alleging "*the officers* pulled, manipulated, and twisted Calderon's arm" and that "[t]*he officers* placed the handcuffs extremely tight") (emphasis added).  As Mr. Calderon has since dismissed most of the officers as defendants, it is unclear whether Officer Rodriguez, who remains in the case, or some as yet unnamed defendant, did any of the acts of which Mr. Calderon complains.  Apart from a single allegation that Officer Rodriguez advised Mr. Calderon that he was not detained, *see* Dkt. No. 10 ¶ 18, the amended complaint contains no allegations specific to any officer.

Mr. Calderon may not rely on a "team effort" theory of liability, *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996), and he does not plead that any officer was an "integral participant" in any violation, *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022).  On this ground alone, the federal claims asserted against Mr. Calderon must be dismissed.

### 2. Claims 1 and 2:  Fourth Amendment

Claim 1: In claim 1, Mr. Calderon contends that he was unlawfully seized when officers pulled him from his house, handcuffed him, and subsequently arrested him without probable

cause, in violation of the Fourth Amendment. Dkt. No. 10 ¶¶ 17-20, 30. To state a claim for unlawful seizure or detention, Mr. Calderon must allege facts plausibly showing that, considering the circumstances known to the officer at the time, (1) the officer did not have a reasonable suspicion to believe that Mr. Calderon was engaged in criminal activity, and (2) the length and scope of the seizure was unreasonable. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). To state a claim for unlawful arrest, Mr. Calderon must allege facts plausibly showing that he was arrested without probable cause. "Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable officer would conclude there is a fair probability that Mr. Calderon had committed or was committing a crime. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012).

Mr. Calderon alleges that officers came to his residence and his girlfriend told them no domestic violence had occurred. He alleges no other facts pertinent to claim 1. Dkt. No. 10 ¶¶ 28-30. Defendants argue that these facts are insufficient to support a claim for unlawful seizure and/or arrest. Dkt. No. 32 at 8-9. Moreover, they suggest that Mr. Calderon's amended complaint provides a selective account of the event in question and deliberately omits facts that are undisputed and known to Mr. Calderon. *Id.* at 9. Indeed, defendants argue that the only reasonable inference that can be drawn from the facts as alleged is that "there was a reason officers responded to [Mr. Calderon's] residence and were specifically concerned with whether domestic violence was occurring." *Id.*

The Court agrees with defendants that Mr. Calderon fails to state a claim for unlawful seizure and/or arrest under the Fourth Amendment. His girlfriend's statement to officers is not enough, particularly where the amended complaint is utterly silent about Mr. Calderon's *own conduct* during the period preceding the officers' arrival at his residence. However, the Court rejects defendants' thesis that officers never go "door-to-door" when investigating a suspected crime and never mistakenly detain or arrest a person for an offense he has not committed, and that this is the only "obvious and reasonable inference" that can be drawn from the allegations in the amended complaint. *See id.*

The Court dismisses claim 1, with leave to amend, as explained below.

6

Claim 2: In claim 2, Mr. Calderon contends that defendants used excessive force against him in violation of the Fourth Amendment. To state a claim for use of excessive force, Mr. Calderon must allege facts plausibly showing that the force used against him was objectively unreasonable. *See, e.g., Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021); *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Here, Mr. Calderon states that he was "violently pulled" from his home, that his arm was twisted behind his back, that he was placed in "extremely tight" handcuffs, and that, as a result, he suffered tendinitis and nerve damage in his left hand. Dkt. No. 10 ¶¶ 18-20. In addition, Mr. Calderon alleges he was complying with the officers, was not attempting to resist arrest, and was not engaging in violent or threatening behavior. *Id.* ¶¶ 18, 30, 34. Mr. Calderon states that he was eventually arrested for a domestic violence offense, but as noted above, the amended complaint includes no allegations regarding the circumstances immediately preceding the officers' arrival at Mr. Calderon's residence. However, construing the facts alleged in the light most favorable to Mr. Calderon, the Court concludes that he has plausibly alleged that the force used against him, which he says left him with tendinitis and nerve damage in his left hand although he was entirely compliant, was excessive. *See LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force."). However, as noted above, because Mr. Calderon has not alleged that Officer Rodriguez or any other specific defendant applied handcuffs in a manner that Mr. Calderon says caused him injury, claim 2 also fails to state a claim for relief.

The Court dismisses claim 2, with leave to amend, as explained below.

### 3. Claim 3: First Amendment

At the hearing on defendants' motion to dismiss, Mr. Calderon's counsel advised the Court that Mr. Calderon withdraws his opposition to dismissal of claim 3. Dkt. No. 38. Accordingly,

7

claim 3 is dismissed with prejudice.

### C. Qualified Immunity

Defendants contend that even if the amended complaint states claims for relief, Officer Rodriguez is entitled to qualified immunity as to all federal claims asserted against him as a matter of law. Dkt. No. 32 at 14-15. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (establishing the two-part test). In determining whether an officer is entitled to qualified immunity, courts consider "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Est. of Lopez*, 871 F.3d at 1005 (internal quotations and citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. While the law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Satisfying this standard "usually require[s] 'controlling authority' or a robust 'consensus of cases of persuasive authority.'" *Hart v. City of Redwood City*, 99 F.4th 543, 555 (9th Cir. 2024) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63 (2018)).

"[S]pecificity is especially important in the Fourth Amendment context . . . ." *Kisela*, 584 U.S. at 104 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). When addressing allegations of excessive force, courts consider whether "clearly established law prohibited [the defendant] from using the degree of force that [he or she] did in the specific circumstances that the officers confronted." *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021) (internal quotations omitted). "[P]olice officers are entitled to qualified immunity unless existing precedent, squarely governs the specific facts at issue." *Id.* at 1036-37(quoting *Kisela*, 584 U.S. at 104).

1    However, dismissal on the basis of qualified immunity is "not appropriate unless [the
2    Court] can determine, based on the complaint itself, that qualified immunity applies." *Polanco v.*
3    *Diaz*, 76 F.4th 918, 925 (9th Cir. 2023), *cert. denied*, No. 23-722, 2024 WL 2116277 (U.S. May
4    13, 2024), *and cert. denied*, No. 23-842, 2024 WL 2116278 (U.S. May 13, 2024) (quotations and
5    citations omitted). "'The "clearly established" prong of the qualified immunity analysis is a
6    matter of law' to be decided by the Court, once factual issues are resolved." *Est. of Stanley v. City*
7    *of San Jose*, No. 22-CV-03000-VKD, 2022 WL 16837050, at *5 (N.D. Cal. Nov. 9, 2022)
8    (quoting *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2017)).

Here, claims 1, 2, and 3 are dismissed for failure to state a claim, and thus there is no reason to consider the question of qualified immunity as to those claims.

### D.    State Claims

Mr. Calderon asserts five claims under California state law against Officer Rodriguez personally, and against the City as his supervisor: claims 5-8 are directed to the torts of negligence, assault, battery, and false imprisonment; claim 4 asserts violations of the Bane Act, California Civil Code § 52.1. Dkt. No. 10 ¶¶ 40-57. However, unless Mr. Calderon states a claim for relief under federal law, the Court lacks original jurisdiction of this action and may not exercise supplemental jurisdiction over any state law claim. Nevertheless, the Court addresses the arguments the parties have already briefed as to these claims.

#### 1.    Claims 5-7:  Negligence, Assault, Battery

Defendants move to dismiss claims 5-7 on the ground that Officer Rodriguez is immune from suit as to all claims under California law. Dkt. No. 32 at 18-19 (citing Cal. Gov. Code § 820.2 (immunity for acts of public employees that are "the result of the exercise of the discretion vested in [them], whether or not such discretion be abused") and § 820.4 (immunity for public employees "exercising due care[] in the execution or enforcement of any law")). They further argue that, because Officer Rodriguez is immune, the City cannot be held liable under respondeat superior. *Id.* at 18 (quoting Cal. Gov't Code § 815.2(b)) ("[E]xcept [as] otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."). Mr. Calderon counters that

9

these immunities do not apply if he is able to show that Officer Rodriguez used excessive or unreasonable force against him. Dkt. No. 36 at 7.

Mr. Calderon's tort claims for negligence, assault, and battery are based on the same allegations on which he relies for his Fourth Amendment excessive force claim. *See* Dkt. No. 10 ¶ 45 (defendants breached their duties to "use reasonable force" and "allow citizens to be free from unreasonable searches and seizures" by "violently pulling [Mr. Calderon's] arm and handcuffing [him]"). Mr. Calderon is correct that California law does not afford officers immunity for the use of unreasonable force. *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) ("But it has long been established that [section 820.2] does not apply to officers who use unreasonable force in making an arrest."); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect."). And where an individual officer is not immune, the City likewise does not enjoy the benefit of any immunity. *See Sanderlin*, 2022 WL 913055 at *14 ("Because the Court has just rejected Defendants' argument that the Doe Defendants are entitled to statutory immunity, the City is not entitled to immunity on this basis.").

However, as discussed above, Mr. Calderon has failed to state a claim for relief against Officer Rodriguez or any other defendant for use of excessive force, and as he relies on the same allegations to support his state law claims of negligence, assault, and battery, those claims too must be dismissed, with leave to amend, as explained below.

### 2. Claim 8: False Imprisonment

Defendants raise no specific grounds for dismissing claim 8 for false imprisonment. *See* Dkt. 32 at 20 (asking the Court to dismiss only the "state-law claims for negligence, assault and battery"). In any event, Mr. Calderon is correct that section 820.4 explicitly excludes "false imprisonment" from immunity. Cal. Gov. Code § 820.4 ("Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."). However, because the Court dismisses all federal claims, it lacks jurisdiction over any remaining state claims, including claim 8. Mr. Calderon may re-assert and amend this claim if he files a second amended complaint.

### 3. Claim 4: Bane Act

Mr. Calderon alleges that, by using excessive force against him, defendants interfered with his right to "be free and secure from unreasonable searches and seizures" as well as "his right to freedom of speech and right to question police action" in violation of the Bane Act. Dkt. No. 10 ¶ 42. The Bane Act provides a right of action against those who "whether or not acting under color of law, interfere[] by threat, intimidation, or coercion, or attempt[] to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. In addition to alleging a constitutional violation, the Bane Act requires a plaintiff to allege the defendant's "specific intent" to violate the constitutional right at issue. *Reese*, 888 F.3d at 1043. "Specific intent" implicates two questions: "(1) '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and (2) '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 803 (2017)). A showing of "particular purpose" does not require that the "officers understood they were acting unlawfully" but merely that they were acting in "reckless disregard of the 'right at issue.'" *Cornell*, 17 Cal. App. 5th at 804.

Defendants do not assert any grounds for dismissing Mr. Calderon's Bane Act claim in their original motion; they address the Bane Act claim only in their reply brief. *See* Dkt. No. 32; Dkt. No. 37 at 10. The Court will not consider arguments asserted for the first time in a reply brief. *See In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2019 WL 3817849, at *8 (N.D. Cal. Aug. 14, 2019) ("Defendants did not challenge the . . . claim in their opening brief, and for this reason alone the Court could deny their motion to dismiss this claim."); *see also Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that '[t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.'") (citation omitted). However, as Mr. Calderon now concedes that his First Amendment retaliation claim (claim 3) must be dismissed, it is unclear whether there remains any basis on which Mr.

1    Calderon may still assert a claim under the Bane Act. In any event, because the Court dismisses
2    all federal claims, it lacks jurisdiction over any remaining state claims, including claim 4. Mr.
3    Calderon may re-assert and amend this claim if he files a second amended complaint.

        **E.**       **Leave to Amend**

5    Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be
6    freely given when justice so requires," and "the court must remain guided by the underlying
7    purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or
8    technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and
9    citations omitted). "The decision of whether to grant leave to amend nevertheless remains within
10   the discretion of the district court," which may deny leave to amend if allowing amendment would
11   unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking
12   amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th
13   Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

14   Here, because it is possible that Mr. Calderon can plead additional facts sufficient to state
15   plausible claims for relief, the Court will give him leave to amend claims 1, 2, and 5-7. He may
16   also re-assert and amend claims 4 and 8.

17   At the hearing on defendants' motion to dismiss, defendants advised that they have body
18   worn camera video of officers' interaction with Mr. Calderon as well as an audio recording of a
19   call for service. Dkt. No. 38. Defendants do not object to providing these materials to counsel for
20   Mr. Calderon under the protection of a protective order, if necessary. *Id.* Counsel for Mr.
21   Calderon agrees that it would be helpful to have these materials before making further
22   amendments to the complaint.

23   Accordingly, the Court orders defendants to produce the body worn camera video and
24   audio recording to counsel for Mr. Calderon as soon as practicable.

**IV.**    **CONCLUSION**

26   For the reasons explained above, the Court grants defendants' motion to dismiss as
27   follows:

28          1.   Claims 1, 2, and 5-7 are dismissed with leave to amend;

      2. Claim 3 is dismissed with prejudice;

      3. Claims 4 and 8 may be re-asserted and amended.

Mr. Calderon must file his second amended complaint by **August 16, 2024**. The Court continues the initial case management conference to **October 1, 2024 at 1:30 p.m.** via Zoom videoconference.

**IT IS SO ORDERED.**

Dated: July 26, 2024

Virginia K. DeMarchi
United States Magistrate Judge

13